Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

*Attorney for Plaintiffs*



# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY SWEARINGEN, ROBERT FIGY and DANIEL BATES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>CONAGRA FOODS, INC.,<br><br>Defendant. | Case No. CV 13 5322 KAW<br><br>**CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED**<br><br>Action Filed: November 15, 2013 |

Plaintiffs MARY SWEARINGEN, ROBERT FIGY and DANIEL BATES ("Plaintiffs") bring this lawsuit against Defendant ConAgra Foods, Inc. ("CONAGRA" or "Defendant") based upon their personal knowledge as to their acts and upon information and belief as to all other matters.

## INTRODUCTION

1.     This case seeks to recover for the injuries suffered by the Plaintiffs and the Class as a direct result of the Defendant's unlawful sale of misbranded food products. Defendant's actions violate numerous California statutes as well as each of the unlawful, unfair and fraudulent prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL") and the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.* ("CLRA"). Defendant packaged and labeled its food products in violation of California's Sherman Law which adopts, incorporates, and is, in all

relevant aspects, identical to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA") and the regulations adopted pursuant to that act.  These violations render Defendant's food products "misbranded."

2.   Under California law, misbranded food products cannot be legally sold or possessed, have no economic value and are legally worthless.  Indeed, the sale or possession of misbranded food products is a criminal act in California.

3.   By selling such illegal products to unsuspecting Plaintiffs and implying that each is legal to buy, hold or sell, the Defendant profited at the Plaintiffs' expense and unlawfully deprived Plaintiffs of the money they paid to purchase illegal food products that were illegal to sell, possess or resell and had no economic value while simultaneously exposing the Plaintiffs to potential legal risk by virtue of their possession of misbranded food products.

4.   The "Class Period" is November 14, 2009 to the present.

5.   "Purchased Products" are those products that were purchased by Plaintiffs during the Class Period. Plaintiffs MARY SWEARINGEN, ROBERT FIGY and DANIEL BATES purchased CONAGRA'S Fleischmann's Original 60% Whipped Vegetable Oil Spread and Orville Redenbacher's Buttery Flavor Popcorn Oil.  Photographs of the Purchased Products are attached as Exhibits 1 - 2.

6.   "Class Products" are the Purchased Products and Defendant's other 3 Substantially Similar Products listed below in Paragraph 12 that bear the identical unlawful and illegal label statements as that found on the Purchased Products. CONAGRA uses unlawful labels bearing unlawful "Excellent source of omega 3 ALA" and "0g Trans Fat" nutrient content claims for all the Class Products as is more fully described below.  The types of unlawful nutrient content claim employed by CONAGRA are specifically banned from use on food labels under California and federal law.

## SUMMARY OF THE CASE

7.   Plaintiffs' case has two distinct facets.  First is the "UCL unlawful" part based on the unlawful sale of an illegal product. Plaintiffs' first cause of action is brought pursuant to the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL").

Plaintiffs allege that Defendant packages and labels Class Products, including its Fleischmann's Original 60% Whipped Vegetable Oil Spread and Orville Redenbacher's Buttery Flavor Popcorn Oil, in violation of California's Sherman Law which adopts, incorporates, and is, in all relevant aspects, identical to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 et seq. ("FDCA"). These violations do not require a finding that the labels are "misleading" and alone render the Class Products, including Defendant's Fleischmann's Original 60% Whipped Vegetable Oil Spread and Orville Redenbacher's Buttery Flavor Popcorn Oil "misbranded."

8.     Second, the "deceptive" part. Plaintiffs allege that the labels on the Purchased Products – aside from being unlawful under the Sherman Law – are also misleading, deceptive, unfair and fraudulent.  Plaintiffs herein this Complaint describe  these labels and how they are misleading.  Plaintiffs allege that they reviewed the labels on the Purchased Products, reasonably relied in substantial part on the labels, and were thereby deceived, in deciding to purchase these products.  Moreover, the very fact that Defendants sold such misbranded products and did not disclose this fact to consumers is a deceptive act in and of itself.  Plaintiffs would not have purchased products that are illegal to own or possess.  Had Defendants informed Plaintiffs of this fact there would have been no purchases.

9.     A separate facet of the deceptive claims are that Defendant's Fleischmann's Original 60% Whipped Vegetable Oil Spread and Orville Redenbacher's Buttery Flavor Popcorn Oil line are equally deceptive by the very fact that Defendant sold such illegal products and did not disclose this fact to consumers. Plaintiffs would not have purchased a product that is illegal and a crime to own or possess. Had Defendant informed Plaintiffs of this fact there would have been no purchases. Plaintiffs relied upon the Defendant's implied representation that Defendant's products were legal that arose from Defendant's material omission of the fact that the products were illegal

10.    Plaintiffs did not know, and had no reason to know, that Defendant's Purchased Products were misbranded under the Sherman Law and bore food labeling claims that failed to meet the requirements to make those food labeling claims. Similarly, Plaintiffs did not know, and had no reason to know, that the labels on Defendant's Purchased Products were false and misleading.

11.    Under California law, a food product that is misbranded cannot legally be manufactured, advertised, distributed, held or sold.  Misbranded products cannot be legally sold or possessed, have no economic value and are legally worthless. Cal. Health & Safety Code § 110760. Indeed, the sale or possession of misbranded food is a criminal act in California pursuant to Cal. Health & Safety Code § 110825.  The sale of misbranded products is illegal under California and federal law and can result in the seizure of misbranded products and the imprisonment of those involved.

12.    California law is clear that reliance by Plaintiffs or the Class members is not a necessary element for a UCL plaintiff to prevail under the unlawful prong for a claim based on the sale of an illegal product. If a Defendant's product is sold in violation of some state law, and thereby violates the UCL's unlawful prong, actual reliance is not required. *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 159 (2010) (Reliance not required for claims involving an illegal sale). The reason is simple: because the product is illegal, it should never have been sold in the first place. That is the unlawful act that creates the Defendant's liability under the UCL. Whether the plaintiff or class relied upon the alleged unlawful aspect of the product is not relevant, especially since the UCL's intended focus is on the Defendant's conduct. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (*citing Steroid* and explaining that a California state law claim under the UCL focuses on "Defendant's conduct," rather than any reliance by plaintiff or individualized proof of deception or injury);  *see also Ries v. Arizona Beverages USA, LLC*, 287 F.R.D. 523, 537-38 (N.D. Cal. 2012) (stating liability is imposed and relief available under the unlawful prong "without individualized proof of deception, reliance, and injury."); *In re Tobacco II Cases*, 46 Cal. 4th 298, 325, fn 17 (Cal. 2009)) ("We emphasize that our discussion of causation in this case is limited to such cases where, as here, a UCL action is based on a fraud theory involving false advertising and misrepresentations to consumers. The UCL defines "unfair competition" as "includ[ing] any unlawful, unfair or fraudulent business act or practice ...." (§ 17200) There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application."); *Medrazo v. Honda of N. Hollywood*, 205 Cal. App. 4th 1, 12 (March 21, 2012) ("the Supreme Court also explained that an actual reliance requirement does not apply to UCL actions that are not based

upon a fraud theory"); *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 159 (Cal. App. 2d Dist. 2010) (holding that 'California courts have repeatedly held that relief under the UCL is available without individualized proof of deception, reliance and injury.'); *Frezza v. Google Inc.*, 5:12-CV-00237-RMW, 2013 WL 1736788 at *6 n.3 (N.D. Cal. Apr. 22, 2013) (". . . no reliance is required to prove violations of the UCL based on "unlawful" or "unfair" conduct."); *Olivera v. Am. Home Mortg. Servicing, Inc.*, 689 F. Supp. 2d 1218, (N.D. Cal. 2010) ("For claims based on the "unfair" or "unlawful" prong of the UCL claim, courts have held that the Plaintiffs need not allege reliance on misrepresentations, and may allege 'causation more generally.'"); *Rand ex rel. Dolch v. Am. Nat. Ins. Co.*, CIV, C 09-0639 SI, 2010 WL 2595142 at *3 (N.D. Cal. June 22, 2010) ("Moreover, reliance is only required under the fraud prong of the UCL, and is not an element under the "unfair" or "unlawful" prongs of that statute'); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106 (N.D. Cal., May 11, 2007) ("Plaintiffs need not allege reliance....However, where, as here, plaintiffs allege that they were harmed by other types of misconduct actionable under the UCL the Court finds no basis for requiring reliance on misrepresentations."); "[t]here are a number of theories that have been litigated and rejected as defenses to claims alleging 'unlawful' business practices . . . . Lack of Deception No Defense: That no one was actually deceived by the practice is not a defense to a section 17200 "unlawful" business practice claim. Stern, § 5.166, BUS. & PROF. C. § 17200 PRACTICE (The Rutter Group 2012).

13.     Thus, the unlawful sale of a misbranded product that was illegal to sell or possess – standing alone without any allegations of deception by Defendant, or review of or reliance on the labels by Plaintiffs – gives rise to Plaintiffs' first cause of action under the UCL.   In short, Defendant's injury causing unlawful conduct in selling an illegal product to an unsuspecting consumer is the only necessary element needed for UCL liability. All Plaintiffs need to show is that they bought an unlawful product and were injured as a result. This claim does not sound in fraud. In the present case, Plaintiffs were injured by Defendant's illegal sale of its misbranded products. Plaintiffs paid money to purchase illegal products that were worthless and could not be legally sold or possessed. Plaintiffs were also unwittingly placed in a worse legal situation as a result of Defendant's unlawful sale of an illegal product to each of them. Plaintiffs would not have purchased

Defendant's Fleischmann's Original 60% Whipped Vegetable Oil Spread or Orville Redenbacher's Buttery Flavor Popcorn Oil had they known that the products were illegal and could not be lawfully possessed. No reasonable consumer would purchase such a product. The Class suffered the same injuries as Plaintiffs due to the Class' purchase of the Class Products.

14.     Under California law, which is identical to federal law, Defendant's products listed below are unlawful because they are misbranded due to violations of the Sherman Law:

| Purchased Product | Unlawful Label Statements | Sherman Law Violation (directly or through incorporation of FDCA) |
| --- | --- | --- |
| Fleischmann's Original 60% Whipped Vegetable Oil Spread | "Excellent source of omega 3 ALA" | 21 C.F.R. § 1.21 (adopted and incorporated into Sherman law by reference) 21 C.F.R. § 101.13 Cal. Health & Safety Code § 110390 Cal. Health & Safety Code § 110395 Cal. Health & Safety Code § 110398 Cal. Health & Safety Code § 110400 Cal. Health & Safety Code § 110660 Cal. Health & Safety Code § 110665 Cal. Health & Safety Code § 110670 Cal. Health & Safety Code § 110705 Cal. Health & Safety Code § 110760 Cal. Health & Safety Code § 110765 Cal. Health & Safety Code § 110770 |
| Purchased Product | Unlawful Label Statements | Sherman Law Violation (directly or through incorporation of FDCA) |
| Orville Redenbacher's Buttery Flavor Popcorn Oil | "0g Trans Fat" | 21 C.F.R. § 1.21 21 C.F.R. § 101.13 Cal. Health & Safety Code § 110390 Cal. Health & Safety Code § 110395 Cal. Health & Safety Code § 110398 Cal. Health & Safety Code § |

| | | 110400 |
| | | Cal. Health & Safety Code § 110660 |
| | | Cal. Health & Safety Code § 110665 |
| | | Cal. Health & Safety Code § 110670 |
| | | Cal. Health & Safety Code § 110705 |
| | | Cal. Health & Safety Code § 110760 |
| | | Cal. Health & Safety Code § 110765 |
| | | Cal. Health & Safety Code § 110770 |

15.    The Substantially Similar Products, Defendant's Fleischmann's spread products, identified below which are substantially similar and have the identical unlawful "Excellent source of omega 3 ALA" label statement as Defendant's Fleischmann's Original 60% Whipped Vegetable Oil Spread are also unlawful under California and federal law. The misbranding of those labels is uniform, with the same unlawful "Excellent source of omega 3 ALA" statement which is found on Defendant's Fleischmann's Original 60% Whipped Vegetable Oil Spread also appearing on the following substantially similar products:

- Fleischmann's Light Spread (Exhibit 3);

- Fleischmann's Unsalted Spread (Exhibit 4);

- Fleischmann's Olive Oil Spread (Exhibit 5);

16.    The product labels listed in paragraph 12 likewise violate the Sherman Law. The only difference between Defendant's products listed in paragraph 12 and Defendant's Fleischmann's Original 60% Whipped Vegetable Oil Spread are flavor or irrelevant compositional variances. The Sherman Law does not differentiate between products; it governs labels. Thus, an unlawful labeling statement is unlawful regardless of what flavor spread it is on. Because such unlawful labeling statements result in products being misbranded and illegal to sell or possess, a separate, independent violation of the unlawful prong has occurred in this case due to the unlawful sale of these products. This unlawful sale claim should be distinguished from the completely separate claim that in relying on the Defendant's unlawful "Excellent source of omega 3 ALA" and "0g Trans Fat" labeling statements a consumer was misled into buying a product they would not have otherwise purchased.

This is a separate claim under the unlawful prong but one where a consumer has in fact relied on the labeling statements in question.

17.     Defendant's illegal sale of a misbranded product to a consumer results in an independent violation of the unlawful prong of the UCL that is separate and apart from the underlying unlawful labeling practice that resulted in the product being misbranded. While not required, Plaintiffs reasonably relied on the fact that the Defendant's Fleischmann's Original 60% Whipped Vegetable Oil Spread and Orville Redenbacher's Buttery Flavor Popcorn Oil were legal to sell and possess, and that their labeling and label claims were legal.

18.     Separate from, and in addition to their economic injury resulting from Defendant's sale of unlawful Purchased Products, Plaintiffs were deceived by Defendant's unfair and fraudulent label misrepresentations on the Purchased Products.  Plaintiffs read Defendant's labels on the Purchased Products, and reasonably relied on those labels as a substantial factor in deciding to purchase the Purchased Products. Plaintiffs reasonably believed that the labeling on Defendant's Fleischmann's Original 60% Whipped Vegetable Oil Spread and Orville Redenbacher's Buttery Flavor Popcorn Oil was truthful and accurate.  Plaintiffs did not know, and had no reason to know, that the labeling on Defendant's Purchased Products was false, deceptive, misleading, unfair and fraudulent.   Plaintiffs suffered economic injury as a result of Defendant's false, deceptive, misleading, unfair and fraudulent labels.

19.     As misbranded products the Defendant's products were illegal to sell or possess under both State and federal law. California Health & Safety Code § 110760 expressly provides that it is "unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded."  This provision is criminal in nature and punishable on a strict liability basis by imprisonment and fines listed in California Health & Safety Code § 110825. The Plaintiffs would never have purchased the Defendant's products if they knew they were misbranded and that it was illegal to sell or possess such products. No reasonable consumer would knowingly purchase an illegal product.  Plaintiffs relied on Defendant's implicit representations that the products being purchased by Plaintiffs were not misbranded and were legal to sell and possess.

20.     An obligation to disclose exists for purposes of a claim under the UCL or CLRA

under "four circumstances" of which three apply here: (1) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiffs; (2) when the defendant actively conceals a material fact from the plaintiffs; [or] (3) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

21.     Defendant as the manufacturer, packager, labeler and initial seller of the food products purchased by the Plaintiffs had a duty to disclose that its products were misbranded and illegal to sell and possess. (1) Defendant had exclusive knowledge of material facts not known or reasonably accessible to the Plaintiffs; (2) Defendant actively concealed material facts from the Plaintiffs; and (3) Defendant made partial representations that are misleading because some other material fact has not been disclosed. Defendant's failure to disclose the information it had a duty to disclose constitute material misrepresentations and materially misleading omissions which mislead the Plaintiffs about product legality because Plaintiffs relied on Defendant in this regard to disclose all material facts accurately and truthfully and fully.

## PARTIES, JURISDICTION AND VENUE

22.     Plaintiffs MARY SWEARINGEN, ROBERT FIGY and DANIEL BATES are citizens of the state of California. During the Class Period, Plaintiffs purchased, in San Francisco and San Jose, California, packages of CONAGRA Fleischmann's Original Spread that bore unlawful "Excellent source of omega 3 ALA" nutrient content claims on their labels and packages of CONAGRA Orville Redenbacher's Buttery Flavor Popcorn Oil that bore unlawful "0g Trans Fat" nutrient content claims on their labels.

23.     Defendant CONAGRA is a Delaware corporation with its principal place of business at One ConAgra Drive in Omaha, Nebraska 68102. CONAGRA manufactures, advertises, markets and sells illegal products labeled with unlawful nutrient content claims to tens of thousands of consumers nationwide, including many residing in California.

24.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a Class Action in which: (1) there are over 100 members in the proposed Class; (2) members of the proposed Class have a different citizenship from Defendant; and (3) the claims of the proposed Class members exceed $5,000,000 in the aggregate.

25.     The Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Complaint occurred in California, Defendant is authorized to do business in California, Defendant has sufficient minimum contacts with California, and Defendant otherwise intentionally availed itself of the markets in California through the promotion, marketing and sale of products, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

26.     Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because the Court has personal jurisdiction over Defendant, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

## FACTUAL ALLEGATIONS

27.     Defendant manufactures, markets and sells a variety of food products, including the Class Products. Defendant has unlawfully utilized the unlawful "Excellent source of omega 3 ALA" label statements on its Fleischmann's Original Spread products and substantially similar Fleischmann's spread products identified herein despite the fact that these products have a disqualifying amount of fat. Defendant has unlawfully utilized the unlawful "0g Trans Fat" label statements on its Orville Redenbacher's Buttery Flavor Popcorn Oil products despite the fact that this product has a disqualifying amount of fat and saturated fat.

28.     Defendant's use of the "Excellent source of omega 3 ALA" and "0g Trans Fat" label statements is unlawful because its products do not contain the required disclosure statement referring consumers to the nutrition panel for additional information about the excessively high levels of fat. This disclosure statement is required pursuant to 21 C.F.R. § 101.13(h) and California law. Defendant's Fleischmann's Original 60% Whipped Vegetable Oil Spread and Orville Redenbacher's Buttery Flavor Oil and the other Class Products contain more than 13g of fat per the applicable regulatory measuring amount of 50g of product, and therefore the disclosure statement required by 21 C.F.R. § 101.13(h) is required when those products bear a nutrition content statement of any kind. Defendant's Orville Redenbacher's Buttery Flavor Oil also contain more than 4g of saturated fat per the applicable regulatory amount of 50g of product, and therefore the disclosure

statement required by 21 C.F.R. § 101.13(h) is required when this product bears a nutrition content statement of any kind.

29.     Identical California and federal laws regulate the content of labels on packaged food. The requirements of the federal FDCA were adopted by the California legislature in the Sherman Law. Under both the Sherman Law and FDCA Section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. Cal. Health & Safety Law §§ 110660, 110705; 21 U.S.C. § 343.

30.     Plaintiffs' claims are brought under California's Sherman law.

31.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those claims that might be technically true, but which are still misleading. If any representation in the labeling is misleading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement.

32.     The labels and labeling of Defendant's products included in the class are unlawful and misbranded due to the following conduct:

> Making unlawful "0g Trans Fat" and "Excellent source of Omega 3 ALA" claims because of the failing to utilize the mandatory disclosure statements required to inform consumers the products contained deleterious ingredients at levels deemed to pose a danger of diet related disease or condition.

> Making misleading[1] "0g Trans Fat" and "Excellent source of Omega 3 ALA" claims and failing to utilize the mandatory disclosure statements required to inform consumers the products contained deleterious ingredients at levels deemed to pose a danger of diet related disease or condition which making .

33.     Defendant sells the following substantially similar spread products ("Class Products") with the identical unlawful "Excellent source of omega 3 ALA" label statements found on the Fleischmann's Original 60% Whipped Vegetable Oil Spread (Exhibit 1) purchased by Plaintiffs:

- Fleischmann's Light Spread (Exhibit 3);

- Fleischmann's Unsalted Spread (Exhibit 4);

---

[1] A product is misbranded and unlawful to sell or possess if its label is misleading in any particular. The sale of such a product is unlawful and a violation of the unlawful prong even absent reliance on the misrepresentation. While the product label may be misleading, no one has to be misled by the label for a cause of action to result. They only need to be injured by the purchase of an illegal product. Products can be equally illegal for several reasons. The products at issue here are illegal for two reasons: 1) they bear unlawful label claims and 2) they bear misleading label claims.

• Fleischmann's Olive Oil Spread (Exhibit 5);

34.    Exemplar labels are provided in Exhibits 1-5. These exhibits are true, correct and accurate photographs of Defendant's identical "0g Trans Fat" and "Excellent source of Omega 3 ALA" package labels.

35.    Each of the above listed CONAGRA spread products' labels contain the unlawful "Excellent source of omega 3 ALA" statements, but do not contain the required disclosure statement despite containing more than 13g of fat per 50g of product. In other words, the spread products in the Class Products are unlawful for the exact same reasons that the Fleischmann's Original Spread product purchased by Plaintiffs is unlawful. The fact that one spread product tastes saltier or has a slightly different composition is completely immaterial and irrelevant.

36.    Defendant's "Excellent source of omega 3 ALA" and "0g Trans Fat" label statements violated 21 C.F.R. 101.13(h) (adopted and incorporated by reference by Cal. Health & Safety Code § 110100) and thus violated the unlawful prong of the UCL. These violations rendered the Class Products, including Defendant's Fleischmann's Original 60% Whipped Vegetable Oil Spread and Orville Redenbacher's Buttery Flavor Popcorn Oil misbranded under the Sherman Law. As misbranded products their sale was prohibited under California Health & Safety Code § 110760.

37.    Defendant has made, and continues to make, unlawful claims on its food label of its Orville Redenbacher's Buttery Flavor Popcorn Oil that are prohibited by federal and California law and which render these products misbranded. Defendant has made, and continues to make, unlawful claims on its food label of its Fleischmann's Original 60% Whipped Vegetable Oil Spread and the Class Products that are prohibited by federal and California law and which render these products misbranded. Under federal and California law, the Class Products cannot legally be manufactured, advertised, distributed, held or sold.  Under the unlawful prong of the UCL, Defendant's conduct of selling misbranded products is actionable irrespective of any reliance, by product purchasers like Plaintiffs.

38.    Defendant's violations of law is its illegal labeling practices which misbrand its products and the illegal advertising, marketing, distribution, delivery and sale of Defendant's misbranded Fleischmann's Original 60% Whipped Vegetable Oil Spread,  Orville Redenbacher's

Buttery Flavor Popcorn Oil and the Class Products to consumers in California and throughout the United States.

39.     Defendant could have easily complied with the labeling regulations by simply adding a disclosure statement to the front of its package under its "Excellent source of omega 3 ALA" and "0g Trans Fat"  statements. In fact, Defendant has done this on other products while simultaneously making unlawful claims on the Class Products.

40.     As a result, consumers, including Plaintiffs and the Class, purchased products that fail to comply with the mandatory labeling requirements and standards established by law such that the products are misbranded and rendered unfit for sale. These products contained levels of fat the FDA has deemed to be deleterious to health and do not contain the required disclosure statement informing consumers of the levels of fat contained in Defendant's products.

41.     Plaintiffs and the Class have been damaged by Defendant's illegal conduct in that they purchased misbranded and worthless products that were illegal to sell or possess based on Defendant's illegal labeling of the products and paid a premium for the products.

## DEFENDANT'S CONDUCT IS UNLAWFUL, UNFAIR AND FRAUDULENT

42.     Plaintiffs' case is brought in two separate parts each of which Conagra is separately liable. The first part is pursuant to the unlawful prong of the UCL, Cal. Bus. & Prof. Code § 17200 ("UCL"), while the second is brought pursuant to the unfair and fraudulent prongs of the UCL, and the CLRA. Plaintiffs allege that Defendant packaged and labeled its Fleischmann's Original 60% Whipped Vegetable Oil Spread and Class Products in violation of California's Sherman Law which adopts, incorporates, and is in all relevant aspects, identical to the federal Food Drug & Cosmetics Act, 21 U.S.C. § 301 et. seq. ("FDCA"). Defendant's Fleischmann's Original 60% Whipped Vegetable Oil Spread and Class Products with these identical types of "Excellent source of omega 3 ALA" and "0g Trans Fat"  labeling violations are "misbranded."

43.     21 C.F.R. § 101.13(h) states:

If a food ... contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less ... per 50 g ... then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as

follows: "See nutrition information for __ content" with the blank filled in with the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content."

44.     During the class period identified herein, Plaintiffs purchased Defendant's Fleischmann's Original 60% Whipped Vegetable Oil Spread labeled with the unlawful statement "Excellent source of omega 3 ALA" and Orville Redenbacher's Buttery Flavor Popcorn Oil labeled with the unlawful statement "0g Tans Fat." The Fleischmann's Original 60% Whipped Vegetable Oil Spread and Orville Redenbacher's Buttery Flavor Popcorn Oil purchased by Plaintiffs fails to bear the mandatory disclosure statement required to inform consumers that the products contained deleterious ingredients at levels deemed by regulators to pose a risk of a "diet related" "disease or health condition."

45.     Defendant also manufactured and sold the following spread products which contain similar ingredients and more importantly, the same identical unlawful "Excellent source of omega 3 ALA" label statements:

- Fleischmann's Light Spread
- Fleischmann's Unsalted Spread
- Fleischmann's Olive Oil Spread

None of these products bore the mandatory disclosure statement required to inform consumers that the products contained deleterious levels of fat deemed by regulators to pose a risk of a diet related disease or health condition.

46.     Plaintiffs reasonably believed that CONAGRA's Fleischmann's and Orville Redenbacher's products were not misbranded were legal to buy and possess, and were truthfully and accurately labeled. Plaintiffs would not have purchased the PURCHASED PRODUCTS had they known they were illegal to purchase and possess, and falsely, deceptively, unfairly and fraudulently labeled.

47.     To appeal to consumer preferences, Defendant made improper nutrient content claims on the Purchased Products and Class Products listed in by using the "Excellent source of omega 3 ALA" and "0g Trans Fat" statements despite the fact that the products contained disqualifying levels of fat and saturated fat.  These nutrient content claims were improper because Defendant failed to

include disclosure statements required by law that are designed to inform consumers of the inherently unhealthy aspects of those products in violation of 21 C.F.R. § 101.13(h), which has been incorporated in California's Sherman Law.

48.     Defendant's unlawful "Excellent source of omega 3 ALA" and "0g Trans Fat" statements on the Purchased Products and Class Products results in independent unlawful prong violations based on a violation for the unlawful sale of an illegal misbranded product to the unsuspecting Plaintiff. The specific labeling violations are Defendant's unlawful "Excellent source of omega 3 ALA" and "0g Trans Fat"  nutrient content claims which violate 21 CFR §§ 1.21 and 101.13 and Sherman Law § 110100. Because of these labeling violations, Defendant's products are misbranded under Sherman Law § 110660, Sherman Law § 110670 and Sherman Law § 110705. Defendant's act of selling a misbranded product violates Sherman Law § 110760 which prohibits the sale or possession of misbranded products.

49.     In addition the particular Omega3 claim made Defendant was unlawful. 21 C.F.R. § 101.54 provides specific requirements for nutrient content claims, which California has expressly adopted in California Health & Safety Code § 110100.   21 C.F.R. § 101.13 specifies that where a particular nutrient does not have an established daily value (DV) under FDA regulations, food producers may not state on their food labels that their food product  is an "excellent source" of the nutrient, or use a comparable phrase, such as "rich in." 21 C.F.R. § 101.54.

50.     Identical Federal and California regulations regulate Omega 3 claims as a particular type of nutrient content claim.  Because Omega 3 does not have an established daily value (DV), food producers may not state on their labels that their products are an "excellent source" of Omega 3, or use a synonym conveying the same message. 21 CFR § 101.54. If food producers employ an Omega 3 nutrient content claim, the claim must have been statutorily authorized and must specify whether the claim is referring to ALA, DHA, or EPA Omega 3 fatty acids using very specific language.

51.     The FDA has issued warning letters indicating products are misbranded when such statutory requirements are not followed and Conagra had or should have had knowledge of these warnings.

52.     Defendant has violated 21 C.F.R. § 101.54 by representing that its products are an "excellent source" of Omega 3, but by failing to follow the statutory requirements for making such an Omega 3 nutrient content claim.  Thus, these products violate the provisions of 21 C.F.R. § 101.54 which have been adopted by California.

53.     Defendant's sale of these misbranded products results in an independent violation of the unlawful prong that is separate from the labeling violation. Plaintiffs' independent claim arises from being sold an illegal product in an unlawful sale. The only necessary element of this latter claim is Defendant's sale of a misbranded product that injured the Plaintiffs. Plaintiffs' injury arises from the unlawful sale of an illegal product that is unlawful to sell and unlawful to possess. No reliance by the consumer is necessary. Plaintiffs have been deprived of money in an illegal sale and given a worthless illegal product in return. In addition, due to the law's prohibition of possession of such a product, Plaintiffs have been unwittingly placed by the Defendant's conduct in a legal position that no reasonable consumer would agree to be placed.

54.     CONAGRA's act of selling an illegally misbranded product violates Sherman Law § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded. The sale of a misbranded product results in an independent violation of the unlawful prong of the UCL that is separate from any labeling violation.

55.     Under Sherman Law § 11825, the sale of such a misbranded product (*i.e.* one whose label fails to use the common and usual ingredient name as required by law) constitutes a criminal act punishable by fine and up to twelve months in jail.  As a result, the injury to the Class arises from the Defendant illegally selling a product it misbranded, the sale of which is a criminal act. Plaintiffs and the Class have been unlawfully deprived of money in an illegal transaction that occurred because the Defendant sold them a worthless, illegal product that could not be legally sold or possessed. Due to the law's prohibition of possession of such a product, consumers have been unwittingly placed, solely and directly by CONAGRA's conduct, in a legal position that no reasonable consumer would choose. Consumers have thus been directly injured by the Defendant's illegal act of unlawfully selling them an illegal product. This harm goes beyond mere economic injury.

56.     FDA warning letters have made it clear that the use of the types of nutrient content claims at issue in this case is unlawful. These warning letters state that foods that bear labels that contain such nutrient content claims are misbranded. Such unlawful conduct by Defendant CONAGRA is actionable under California law irrespective of any reliance by consumers such as Plaintiffs.

57.     Under California law, a food product that is misbranded cannot be legally manufactured, advertised, distributed, possessed or sold. Because these products are illegal to possess, they have no economic value and are legally worthless. Indeed, the sale or possession of misbranded food is a criminal act in California. When Plaintiffs and the Class purchased an illegally misbranded product there is causation and injury even absent reliance on the particular unlawful nutrient content claim that misbranded the product.

58.     The unlawful sale of misbranded food products that are illegal to sell or possess– standing alone without any allegations of deception by Defendant other than the implicit misrepresentation that its products are legal to sell or possess, or any review of or reliance on the particular labeling claims by Plaintiffs – gives rise to Plaintiffs' cause of action under the UCL and the CLRA. In short, Defendant's injury causing unlawful conduct is the only necessary element needed for UCL liability. All Plaintiffs need to show is that they bought an unlawful product that they would not have otherwise purchased absent the Defendant's failure to disclose the material fact that the product was unlawful to sell or possess. Therefore, this claim does not sound in fraud; instead, it alleges strict liability pursuant to the above cited provisions of the federal law and Sherman Law.

59.     Under California law, which is identical to federal law, the sale of Defendant's products listed above is unlawful, because they are misbranded in violation of the Sherman Law.

60.     CONAGRA's unlawful, identical ingredient lists render these products misbranded under California law.

61.     In addition to the violations of law listed above, the Defendant has violated a number of additional California laws.

62.     Defendant's Purchased Products and Class Products are misbranded under California's Health & Safety Code § 110660 because they are false and misleading.

63.     Defendant's Purchased Products and Class Products are misbranded under California's Health & Safety Code § 110670 because they do not conform with the requirements for nutrient content as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto.

64.     Defendant's Purchased Products and Class Products are misbranded under California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on their labeling either are missing or not sufficiently conspicuous.

65.     Defendant violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

66.     Defendant violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

67.     Defendant violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for deliver any such food.

68.     Defendant violated 21 CFR §§ 1.21 and 101.13 (adopted and incorporated by reference by Sherman Law § 110100) and thus violated the unlawful prong.

69.     Defendant's act of selling a misbranded product violates Sherman Law § 110760 (unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded). The sale of a misbranded product results in an independent violation of the unlawful prong that is separate from the labeling violations listed above. When Plaintiffs purchased Defendant's misbranded products there was causation and injury even absent reliance on the misrepresentation/omission that misbranded the product. This injury arises from the unlawful sale of an illegal product that is crime to sell and crime to possess. Plaintiffs were deprived of money in an illegal sale and given a worthless illegal product in return. In addition, due to the law's prohibition of

possession of such a product, consumers have been unwittingly placed by the Defendant's conduct in a legal position that no reasonable consumer would agree to be placed.

70.    Thus, in this case, where Defendant unlawfully sold products bearing an unlawful nutrient content claim unlawful there is 1) a violation of specific labeling regulations and 2) an independent violation of the unlawful prong due to the Defendant's sale of an illegal product that is unlawful to possess.[2]

71.    Plaintiffs would not have bought the misbranded food products if the Defendant had disclosed the material fact that the misbranded food products were illegal to sell and possess. The Defendant had a duty to disclose the illegality of its misbranded products because 1) it had exclusive knowledge of material facts not known or reasonably accessible to the Plaintiff; and (2) the Defendant actively concealed a material fact from the Plaintiff. The Plaintiffs were injured by the Defendant's unlawful act of selling them an illegal product that was illegal to sell or possess.

## CLASS ALLEGATIONS

72.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following "Class:" All persons in the United States who, within the Class Period, purchased one or more of the following CONAGRA products:

- Fleischmann's Original Spread
- Orville Redenbacher's Buttery Flavor Popcorn Oil
- Fleischmann's Light Spread
- Fleischmann's Unsalted Spread
- Fleischmann's Olive Oil Spread

73.    The following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

---

[2] Any consumers who relied on the Defendant's unlawful nutrient content claims and were misled after reading the label would have causes of action under all three prongs of the UCL and the CLRA based on being deceived into buying a product they otherwise would not have bought absent the label claim.

74.     This action can be maintained as a Class Action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

75.     <u>Numerosity</u>: Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that joinder of all Class members is impracticable.

76.     <u>Common Questions Predominate</u>: This action involves common questions of law  and fact applicable to each Class member that predominate over questions that affect only individual Class members. Thus, proof of a common set of facts will   establish the right of each Class member to recover. Questions of law and fact common to each Class member include, for example:

a.      Whether Defendant engaged in unlawful business practices by failing to properly package and label its Class Products sold to consumers;

b.      Whether the Class Products were misbranded as a matter of law;

c.      Whether Defendant made improper and unlawful nutrient content claims;

d.      Whether Defendant violated California Bus. & Prof. Code § 17200 *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*, and the Sherman Law;

e.      Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief; and

f.      Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiffs and the Class.

77.     <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class because Plaintiffs bought Defendant's Purchased Products during the Class Period. Defendant's unlawful actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct in violation of California law. The injuries of each member of the Class were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

78.     Adequacy: Plaintiffs will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class members. Plaintiffs have retained highly competent and experienced Class action attorneys to represent their interests and those of the members of the Class. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this Class action, and Plaintiffs and their counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

79.     Superiority: There is no plain, speedy or adequate remedy other than by maintenance of this Class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a Class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that Class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

80.     The prerequisites to maintaining a Class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

81.     The prerequisites to maintaining a Class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to Class members predominate over any questions

affecting only individual members, and a Class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

82.     Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a Class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Business and Professions Code § 17200, *et seq*.**
**Unlawful Business Acts and Practices**

83.     Plaintiffs incorporate by reference each allegation set forth above.

84.     Defendant's conduct constitutes unlawful business acts and practices.

85.     Under California law, unlawful injury-causing conduct, such as Defendant's unlawful sale of an illegal product, is the only element necessary for the UCL claim. No reliance is necessary when the unlawful sale of an illegal product is at issue. While not required, Plaintiffs relied on the legality of the Defendant's products and the labeling and label claims of those products.  Plaintiffs would not have purchased Defendant's misbranded food products had they known they were not capable of being legally sold or held. No reasonable consumer would have knowingly purchased a product that was illegal to sell or possess.

86.     Defendant sold Purchased Products and Class Products in California during the Class Period.

87.     Defendant is a corporation and, therefore, is a "person" within the meaning of the Sherman Law.

88.     Defendant's business practices are unlawful under § 17200, *et seq*. by virtue of Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

89.     Defendant's business practices are unlawful under § 17200, *et seq*. by virtue of Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.

90.     Defendant sold Plaintiffs and the Class Purchased Products and Class Products that were not capable of being sold or held legally and have no economic value and which were legally worthless. Plaintiffs and the Class lost money as a direct result of Defendant's unlawful conduct.

91.     As a result of Defendant's illegal business practices, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any Class Member any money paid for the Purchased Products and Class Products.

92.     Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiffs and the Class.

93.     As a result of Defendant's conduct, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products by Plaintiffs and any money paid for Defendant's Class Products purchased by the Class.

## SECOND CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### Unfair Business Acts and Practices

94.     Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

95.     Defendant's conduct as set forth herein constitutes unfair business acts and practices.

96.     Defendant engaged in deceptive marketing, advertising, packaging and labeling of Purchased Products and Class Products.

97.     Plaintiffs and the Class were injured as a result of Defendant's unfair acts and practices.

98.     Defendant sold to Plaintiffs and the Class products that were not capable of being legally sold and that have no economic value.

99.     Plaintiffs and the Class paid a premium price for Purchased Products and Class Products.

100.    Plaintiffs and the Class who purchased Purchased Products and Class Products had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided injury.

101.    A reasonable consumer would have relied on Defendant's representations.

102.    The consequences of Defendant's conduct outweigh any justification, motive or reason therefor.

103.    As a result of Defendant's conduct, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Purchased Products and Class Products by Plaintiffs and the Class.

### THIRD CAUSE OF ACTION
#### Business and Professions Code § 17200, *et seq.*
#### Fraudulent Business Acts and Practices

104.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

105.    Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code § 17200, *et seq.*

106.    Defendant's misleading marketing, advertising, packaging and labeling of Purchased Products and Class Products were likely to deceive reasonable consumers.

107.    Plaintiffs and members of the Class were deceived.

108.    Defendant has engaged in fraudulent business acts and practices.

109.    Plaintiffs and the Class were injured by Defendant's fraudulent acts and practices.

110.    Defendant's fraud and deception caused Plaintiffs and the Class to purchase Purchased Products and Class Products that they would otherwise not have purchased had they known the true nature of these products.

111.    As a result of Defendant's conduct as set forth herein, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Purchased Products and Class Products by Plaintiffs and the Class.

### FOURTH CAUSE OF ACTION
#### Business and Professions Code § 17500, *et seq.*
#### Misleading and Deceptive Advertising

112.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

113.    Plaintiffs assert this cause of action for violations of California Business and Professions Code § 17500, *et seq.* for misleading and deceptive advertising against Defendant.

114.    Defendant engaged in a scheme of offering Purchased Products and Class Products for sale to Plaintiffs and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials.

115.    These materials misrepresented and/or omitted the true contents and nature of Purchased Products and Class Products.

116.    Defendant's advertisements and inducements were made within California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product packaging, labeling, and promotional materials were intended as inducements to purchase Purchased Products and Class Products and are statements disseminated by Defendant to Plaintiffs and the Class that were intended to reach members of the Class.

117.    Defendant knew, or in the exercise of reasonable care, should have known, that these statements were misleading and deceptive as set forth herein.

118.    In furtherance of its plan and scheme, Defendant prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and nature of Purchased Products and Class Products.

119.    Plaintiffs and the Class were the intended targets of such representations.

120.    Plaintiffs and the Class reasonably relied on Defendant's representations.

121.    Defendant's conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiffs and the Class was and is likely to deceive reasonable consumers by obscuring the true composition and nature of Purchased Products and Class Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

122.    Plaintiffs and the Class were injured as a result of Defendant's acts and practices.

123. As a result of Defendant's violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiffs and the Class.

124. Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Purchased Products and Class Products by Plaintiffs and the Class.

**FIFTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**Untrue Advertising**

125. Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

126. Plaintiffs assert this cause of action against Defendant for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

127. Defendant engaged in a scheme of offering Purchased Products and Class Products for sale to Plaintiffs and the Class by way of product packaging and labeling, and other promotional materials.

128. These materials misrepresented or omitted the true contents and nature of Purchased Products and Class Products.

129. Defendant's advertisements and inducements were made in California and throughout the United States and come within the definition of advertising contained in Business and Professions Code §17500, *et seq.* where the product packaging, labeling, and promotional materials were intended as inducements to purchase Purchased Products and Class Products, and are statements disseminated by Defendant to Plaintiffs and the Class.

130. Defendant knew, or in the exercise of reasonable care, should have known, that these statements were untrue.

131. In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Purchased Products and Class Products, and falsely misrepresented the nature of Purchased Products and Class Products.

132. Plaintiffs and the Class were the intended targets of such representations.

133. Defendant's conduct in disseminating untrue advertising throughout the United States and California deceived Plaintiffs and members of the Class by obfuscating the contents, nature and quality of Purchased Products and Class Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

134. Plaintiffs and the Class reasonably relied on Defendant's representations.

135. A reasonable consumer would have relied on Defendant's representations.

136. Plaintiffs and the Class were injured as a result of Defendant's acts and practices.

137. As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiffs and the Class.

138. Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Purchased Products and Class Products by Plaintiffs and the Class.

## SIXTH CAUSE OF ACTION
### Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*

139. Plaintiffs incorporate by reference each allegation set forth above.

140. This cause of action is brought pursuant to the CLRA. This cause of action does not currently seek monetary relief and is limited solely to injunctive relief. Plaintiffs intend to amend this Complaint to seek damages in accordance with the CLRA after providing Defendant's with notice pursuant to Cal. Civ. Code § 1782.

141. At the time of any amendment seeking damages under the CLRA, Plaintiffs will demonstrate that the violations of the CLRA by Defendant was willful and oppressive thus supporting an award of punitive damages.

142. Consequently, Plaintiffs and the Class will be entitled to actual and punitive damages against Defendant for its violations of the CLRA. In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs and the Class will be entitled to an order enjoining the above-described acts

1    and practices, providing restitution to Plaintiffs and the Class, ordering payment of costs and

2    attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal.

3    Civ. Code § 1780.

4           143.    Defendant's actions, representations and conduct have violated, and continue to

5    violate the CLRA, because they extend to transactions that are intended to result, or which have

6    resulted, in the sale of goods to consumers.

7           144.    Defendant sold Purchased Products and Class Products in California and throughout

8    the United States during the Class Period.

9           145.    Plaintiffs and members of the Class are "consumers" as that term is defined by the

10   CLRA in Cal. Civ. Code §1761(d).

11          146.    Defendant's Purchased Products and Class Products were and are "goods" within the

12   meaning of Cal. Civ. Code §1761(a).

13          147.    By engaging in the conduct set forth herein, Defendant violated and continues to

14   violate Sections 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of

15   competition and unfair acts or practices in that it misrepresents the particular ingredients,

16   characteristics, uses, benefits and quantities of the goods.

17          148.    By engaging in the conduct set forth herein, Defendant violated and continues to

18   violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of

19   competition and unfair acts or practices in that it misrepresents the particular standard, quality or

20   grade of the goods.

21          149.    By engaging in the conduct set forth herein, Defendant violated and continues to

22   violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of

23   competition and unfair acts or practices in that it advertises goods with the intent not to sell the

24   goods as advertised.

25          150.    By engaging in the conduct set forth herein, Defendant has violated and continues to

26   violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods

27   of competition and unfair acts or practices in that it represents that a subject of a transaction has been

28   supplied in accordance with a previous representation when it has not.

151.    The Plaintiffs were misled by the Defendant's failure to disclose the material fact that the misbranded food products were illegal to sell and possess. They were misled by the Defendant's implicit representation that the misbranded food products were legal to sell and possess and Defendant's material omission of the fact that its misbranded food products were illegal to sell or possess. The Plaintiffs relied on the Defendant's representation that the misbranded food products were legal. The Plaintiffs would not have bought the misbranded food products if the Defendant had disclosed the material fact that the misbranded food products were illegal to sell and possess. A reasonable person would find it important when determining whether to purchase a product that it is unlawful to sell or possess that product.  A reasonable person would not knowingly commit a criminal act. In such a situation, class wide reliance will be presumed because the misrepresentation or omission is material.  There is no impediment to establishing reliance on a classwide basis for the CLRA claim in this case because it can be established by showing that the alleged misrepresentation—that the Defendant's products were legal—was material.

152.    Plaintiffs request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2). If Defendant is not restrained from engaging in these practices in the future, Plaintiffs and the Class will continue to suffer harm. At the present time, Plaintiffs do not seek damages pursuant to the CLRA at this time and only seek injunctive relief at this time for their CLRA cause of action.

## SEVENTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability

153.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

154.    Implied in the purchase of Purchased Products and Class Products by Plaintiffs and the Class is the warranty that the products are legal and can be lawfully purchased.

155.    Defendants knowingly and intentionally misbranded the Purchased Products and Class Products.

156.    Defendants knew those Purchased Products and Class Products were illegal.

157.    When Defendants sold those products they impliedly warranted that the products were legal and could be lawfully purchased.

158.    Plaintiffs would not have knowingly purchased products that were illegal to sell or purchase.

159.    No reasonable consumer would knowingly purchase products that are illegal to sell or purchase.

160.    The Purchased Products and Class Products were unfit for the ordinary purpose for which Plaintiffs and the Class purchased them.

161.    In fact, these Purchased Products and Class Products were economically worthless.

162.    As a result, Plaintiffs and the Class were injured through their purchase of an unsuitable, useless, illegal, and unsellable product.

163.    By reason of the foregoing, Plaintiffs and the Class were damaged in the amount they paid for Purchased Products and Class Products.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial for all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, and on behalf of the general public, pray for judgment against Defendant as follows:

A.      For an order certifying this case as a national Class action and appointing Plaintiffs and their counsel to represent the Class;

B.      For an order awarding, as appropriate, restitution pursuant to the UCL to Plaintiffs and the Class for all causes of action other than the CLRA, as Plaintiffs do not seek monetary relief under the CLRA, but intend to amend their Complaint to seek such relief;

C.      For an order requiring Defendant to immediately cease and desist from selling its Class Products listed in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

D.      For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

E.      For an order awarding attorneys' fees and costs;

F.      For an order awarding pre-and post-judgment interest; and

---

CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT FOR
EQUITABLE AND INJUNCTIVE RELIEF

1    G.    For an order providing such further relief as this Court deems proper.

2

3    Dated: November 15, 2013

_Pierce Gore_

Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com



**Exhibit 1**



| PER SERVING (1 Tbsp) | CAL | FAT |
|---|---|---|
| FLEISCHMANN'S® ORIGINAL (11g) | 60 | 7g |
| Smart Balance® 67% Buttery Spread (14g) | 80 | 9g |



# Nutrition Facts

Serving Size
1 tbsp (11g)
Servings about 30

**Calories 60**
Calories from fat 60

| Amount/serving | %DV* | Amount/serving | %DV* |
|---|---|---|---|
| **Total Fat** 7g | 9% | **Cholesterol** 0mg | 0% |
| Saturated Fat 1.5g | 8% | **Sodium** 35mg | 1% |
| Trans Fat 0g | | **Total Carbohydrate** 0g | 0% |
| Polyunsaturated Fat 3.5g | | **Protein** 0g | |
| Monounsaturated Fat 1.5g | | | |

Vitamin A 6% · Not a significant source of Dietary Fiber, Sugars, Vitamin C, Calcium and Iron.

*Percent Daily Values (DV) are based on a 2,000 calorie diet.

*Contains 400mg per serving, which is 25% of the daily value for ALA (1.6g)

**SATISFACTION GUARANTEED**

**GLUTEN FREE FOOD**

**REFRIGERATE FOR QUALITY**



WWW.PLAST...

...RAND MAD...

| FAT | SAT. FAT | CHOL | SODIUM |
|---|---|---|---|
| 7g | 1.5g | 0mg | 35mg |
| 9g | 2.5g | 0mg | 90mg |

S P R E A D A B L E   •   M E L T S   E A S I L Y

• 0g carbs per serving   •   100% less cholesterol than butte...

0g Trans Fat per serving

**INGREDIENTS:** SOYBEAN OIL, WATER, PALM OIL, PALM KERNEL OIL, FLAXSEED OI... LESS THAN 2% OF: WHEY, SALT, SEA SALT, EMULSIFIERS (MONO- AND DIGLYCERIDES SOY LECITHIN), PRESERVATIVES (POTASSIUM SORBATE, SODIUM BENZOATE CALCIUM DISODIUM EDTA), PHOSPHORIC ACID, VITAMIN A PALMITATE, BETA CAROTENE (COLOR), NATURAL AND ARTIFICIAL FLAVOR, VITAMIN D3.
**CONTAINS: MILK, SOY.**

Co...ra
...ds®

Fo...
...love

P.O. BOX 3768, DEPT. F
OMAHA, NE 68103-0768 U.S.A.

| PER SERVING (1 Tbsp) | CAL | FAT | SAT FAT | CHOL | SODIUM |
|---|---|---|---|---|---|
| FLEISCHMANN'S® ORIGINAL (11g) | 60 | 7g | 1.5g | 0mg | 35mg |
| Smart Balance® 67% Buttery Spread (11g) | 80 | 9g | 2.5g | 0mg | 90mg |

## S P R E A

*0g Trans Fat per serving*

**INGREDIENTS:** SOYBEAN
LESS THAN 2% OF: WHEY
SOY LECITHIN), PRESE
CALCIUM DISODIUM ED
CAROTENE (COLOR), NAT
**CONTAINS: MILK, SOY.**

| %DV* | Amount/serving | | %DV* |
|---|---|---|---|
| 9% | **Cholesterol** 0mg | | 0% |
| 8% | **Sodium** | | 1% |
| | **Tot**... ydrate 0g | | 0% |
| ...5g | Pr... | | |
| d Fat 3.5g | | | |
| d Fat 1.5g | | | |



**Exhibit 2**



## Nutrition Facts

Serving Size 1 Tbsp (15mL)
Servings about 32

**Amount Per Serving**

Calories 120  Calories from Fat 120

| | %Daily Value* |
|---|---|
| **Total Fat** 14g | **22%** |
| Saturated Fat 2g | **10%** |
| Trans Fat 0g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 0mg | **0%** |
| **Total Carbohydrate** 0g | **0%** |
| Dietary Fiber 0g | **0%** |
| Sugars 0g | |
| **Protein** 0g | |

Vitamin A 0%  •  Vitamin C 0%
Calcium 0%  •  Iron 0%
*Percent Daily Values are based on a 2,000 calorie diet.

INGREDIENTS: SOYBEAN OIL, ARTIFICIAL FLAVOR COLORED WITH BETA CAROTENE.

Taste.
pping

(K)

TIFICIAL
FLAVOR

(473mL)

Uns
Repla
For Super
Follow instructi
Orville Redenba
Popping

**ConAgra Foods**

ConAgra Foods, Inc.
P.O. Box 3768, Oma
Omaha, NE 68103-

QUESTIONS OR COMM
Mon.-Fri., 10:00 AM-
1-800-243-0303 (exc
holidays). Please have
available when you ca
gather information on

CAUTION: ANY OIL WI
OVERHEATED. DO N
UNATTENDED WHILE H
SMOKING OCCURS. RE
PRODUCT CATCHES F
HEAT AND COVER PIT U
DO NOT PUT WATER
FLAMING OIL. DO NO
BACK INTO THIS PLAST



**Exhibit 3**



**Fleischmann's Light Spread**

Instantly add richness and flavor without adding guilt with this spreadable, meltable indulgence. With 60% less fat and calories than butter and 0g saturated fat and carbs, you can feel good about this choice.

ⓘ Nutrition Information

**Fleischmann's Unsalted Spread**

Fleischmann's Unsalted offers the light, buttery taste ideal for those trying to cut back on their sodium. It is also cholesterol free, lactose free and is Kosher pareve.

ⓘ Nutrition Information

**FLEISCHMANN'S**

## Light Whipped Tub

# Nutrition Facts

Serving Size 1 Tbsp (14g)
Servings Per Container about 15

Amount Per Serving

| | |
|---|---|
| **Calories** 40 | Calories from Fat 40 |

| | % Daily Value* |
|---|---|
| **Total Fat** 4.5g | 7% |
|    Saturated Fat .5g | 3% |
|    Trans Fat 0g | |
|    Polyunsaturated Fat 2g | |
|    Monounsaturated Fat 1g | |
| **Cholesterol** 0mg | 0% |
| **Sodium** 65mg | 3% |
| **Total Carbohydrate** 0g | 0% |
| **Protein** 0g | |
| Vitamin A 6% | |

Not a significant source of Dietary Fiber, Sugars,
Vitamin C, Calcium and Iron.

Product formulations and packaging may change. For the
most current information regarding a particular product,
please refer to the product package.

* Percent Daily Values (DV) are based on a 2,000
calorie diet.

UPC: 2700031008



**Exhibit 4**



## Fleischmann's Light Spread

Instantly add richness and flavor without adding guilt with this spreadable, meltable indulgence. With 60% less fat and calories than butter and 0g saturated fat and carbs, you can feel good about this choice.

ⓘ Nutrition Information

## Fleischmann's Unsalted Spread

Fleischmann's Unsalted offers the light, buttery taste ideal for those trying to cut back on their sodium. It is also cholesterol free, lactose free and is Kosher pareve.

ⓘ Nutrition Information

FLEISCHMANN'S

## Unsalted Sleeve

# Nutrition Facts

Serving Size 1 Tbsp (11g)
Servings Per Container about 30

Amount Per Serving

| | |
|---|---|
| **Calories** 60 | Calories from Fat 60 |

| | % Daily Value* |
|---|---|
| **Total Fat** 7g | 11% |
| Saturated Fat 1g | 5% |
| Trans Fat 0g | |
| Polyunsaturated Fat 3.5g | |
| Monounsaturated Fat 1.5g | |
| **Cholesterol** 0mg | 0% |
| **Sodium** 0mg | 0% |
| **Total Carbohydrate** 0g | 0% |
| **Protein** 0g | |
| Vitamin A 6% | |

Not a significant source of Dietary Fiber, Sugars,
Vitamin C, Calcium and Iron.

Product formulations and packaging may change. For the
most current information regarding a particular product,
please refer to the product package.

* Percent Daily Values (DV) are based on a 2,000
calorie diet.

UPC: 2700031149



Exhibit 5



FLEISCHMANN'S

## Olive Oil Mini Tub

# Nutrition Facts

Serving Size 1 Tbsp (11g)
Servings Per Container about 15

Amount Per Serving

| **Calories** 60 | Calories from Fat 60 |
|---|---|

| | **% Daily Value\*** |
|---|---|
| **Total Fat** 6.5g | 10% |
|   Saturated Fat 1g | 5% |
|   Trans Fat 0g | |
|   Polyunsaturated Fat 3g | |
|   Monounsaturated Fat 1.5g | |
| **Cholesterol** 0mg | 0% |
| **Sodium** 45mg | 2% |
| **Total Carbohydrate** 1g | 0% |
| **Protein** 0g | |
| Vitamin A 6% | |

Not a significant source of Dietary Fiber, Sugars, Vitamin C, Calcium and Iron.

Product formulations and packaging may change. For the most current information regarding a particular product, please refer to the product package.

\* Percent Daily Values (DV) are based on a 2,000 calorie diet.

UPC: 2700031006